# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JASON LOLLAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 12 C 9880 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Jason Lollar appeals from defendant's final decision denying his application for Social Security disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## Background

In November 2007, Lollar was diagnosed with bipolar disorder after a suicide attempt. (AR at 369-71.) He was given prescriptions for bipolar disorder (Depakote), depression (Prozac), anxiety (Buspar) and alcohol dependence (Campral) and instructed to return for medication management and therapy. (*Id.* at 369, 372.) The record does not show what treatment, if any, Lollar received from December 2007 through February 9, 2009.

On February 10, 2009, Lollar saw Dr. Michael Kuna, who said Lollar was "[d]oing pretty well," and had "a new waiter job at a family Italian restaurant." (*Id.* at 389.) Kuna said Lollar's

speech, thought process, memory, language, fund of knowledge and attention span were normal and gave him a Global Assessment of Functioning ("GAF")[1] of 50. (*Id.* at 389-90.)

On April 24, 2009, Lollar saw Dr. Shelly Oxenhorn, whose notes state:

> Patient reports he has minor mood swings, two weeks ago felt depressed, today feeling good, states he is doing well, affect is bright and reactive, no suicidal ideation, no increase in goal directed activity, sleeping 8 hours per night, appetite normal for this patient, no pressured speech or . . . flight of ideas endorsed. No racing thoughts endorsed. He is looking for a job. In the past he has worked as a food server.

(*Id.* at 387.) In addition, Oxenhorn noted that Lollar's speech was normal and his thought process, memory, attention span, concentration, language and fund of knowledge were "grossly intact." (*Id.*) She said his impulse control was "good" and that he "exhibit[ed] no signs of depression, anxiety, agitation or mood lability." (*Id.*) She gave Lollar a GAF of 70. (*Id.* at 388.)

On October 23, 2009, Lollar was seen by Dr. Sanjeev Dwivedi, whose notes state:

> Last F/U with Dr. Oxyhorn [sic] in 4.2009. [PT] reports that he has been off medications for 6 months, reports that he has been feeling depressed, reports that he went to ER for breathing problems, was told that he has anxiety. PT reports that he has been worried about physical [symptoms], reports that he has been experiencing pain around penile area. . . . PT reports that he sleeps well, no suicidal thoughts, no psychosis.

(*Id.* at 435.) The notes also say that Lollar's mood was depressed and anxious, but his memory, concentration, attention span, language and fund of knowledge were intact. (*Id.* at 436-48.) Lollar

---

[1] The GAF is a scale from 1-100 used to rate a person's "psychological, social, and occupational functioning." American Psychological Association, Diagnostic & Statistical Manual of Mental Disorders, Text Revision, 4th ed. ("DSM-IV-TR") at 34 (2000). A score of 41-50 indicates "[s]erious symptoms" or any "[s]erious impairment in social, occupational, or school functioning." *Id.* A score of 51-60 indicates "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.* A score of 61-70 indicates "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id.*

2

agreed to resume taking the previously-prescribed medications and to seek medical attention for his physical symptoms. (*Id.* at 438.)

On November 6, 2009, Lollar again saw Dwivedi, whose notes from this visit state:

> PT diagnosed with bipolar disorder type II, alcohol and marijuana abuse, came for medication F/U. . . . PT reports that he has been tired, feeling sad due to not been employed and financial stress. [PT] reports that he is also frustrated with his physical illness: has an appt with the specialist to follow up on Peyronie disease.[2] PT reports no suicidal thoughts. PT reports that he has no mania or psychosis.
>
> . . . .
>
> PT reports depression to be situational, reports being unmotivated, stressed to due to physical [symptoms] and finances.

(*See id.* at 440.) Dwivedi noted that Lollar's speech, thought process, memory, attention span, concentration, language and fund of knowledge were intact. (*Id.* at 441-43.)

When Lollar next saw Dwivedi, on March 26, 2010, he noted a "worsening of [Lollar's] depression" caused by his:

> [Failure to] compl[y] with medications for past couple of months. [Pt] irritable, mood swings, not sleeping well at night, anxious most of the time, . . . low energy and motivation, anhedonia, fatigued all the time, not social with people, does not feel comfortable around people, hard to connect with people. Pt reports that he has had going [sic] for past month or so, not suicidal, no reports of mania or psychosis. Pt reports that he has experienced side effects from Prozac. Mother reports that he does not function well without medications. . . .

(*Id.* at 445.) Dwivedi said Lollar's memory, concentration, attention span, language and fund of knowledge were intact and gave him a GAF of 55. (*Id.* at 446-49.)

---

[2]Peyronie's disease "is the development of fibrous scar tissue inside the penis that causes curved, painful erections." *See* http://www.mayoclinic.com/health/peyronies-disease/DS00427 (last visited Aug. 23, 2013).

3

On April 8, 2010, Lollar was seen by Dr. Melany Danehy, whose notes states:

[B]alanced better, for 6 mo's [sic] off meds and got depressed and withdrawing, didn't work. [Q]uit etoh [alcohol] - 2.5 yrs ago and marijuana 1.5 yrs. On prozac 30 and buspar 20 bid and 2000 of depakote 2 yrs. Hospitalized – od seroquel 3 yrs ago. [N]o SI [suicidal ideation] since then. Sleep schedule is erratic. [S]ometimes 5 hrs, sleeps more w/ depression.

(*See id.* at 451.) Danehy deemed Lollar's thought process, memory, concentration, attention span, language and fund of knowledge to be intact, gave him a GAF of 55, changed his medication and instructed him to return in a few weeks. (*Id.* at 453-55.)

On April 29, 2010, Lollar applied for disability insurance benefits and supplemental security income, alleging that his mental conditions had rendered him disabled since January 7, 2009. (*Id.* at 19.)

On May 26, 2010, Lollar saw Danehy, whose notes state:

No change in anxiety – still looking for job. [S]taying home – watching tv, doesn't have money to go out. 20 mg prozac for 7 weeks now. Depression still there/blah - but no depression [sic]. In a band and doing a photoshoot tonite. Somedays does isolate. erratic sleep - 10 hrs.

(*Id.* at 457.) She deemed his thought process, memory, concentration, attention span, language and fund of knowledge to be intact. (*Id.* at 458-60.)

On June 30, 2010, John R. Brauer, a clinical psychologist, conducted a disability evaluation of Lollar for defendant. (*See id.* at 465.) Brauer said:

[Lollar's] affect was wide ranging and grossly appropriate and his speech was clear, logical and sequential with no unusual content or preoccupations evident. He denies any history of hallucinations or delusions and did not demonstrate any signs of such issues in the course of this evaluation.

His concentration and attention appear to be within normal limits . . . .

The claimant's general fund of knowledge appears to be grossly intact . . . .

4

> His capacity for abstraction is well developed . . . . He retains his capacity for classification and categorization . . . .
>
> The claimant's judgment appears to be grossly appropriate . . . .
>
> . . . . Mr. Lollar describes a history of chronic depressed mood as well as occasional suicidal ideation. He has no history of manic or hypomanic episodes, so his diagnosis of bipolar is unsupported. He also describes anxiety and panic attacks, as well as obsessive behaviors that are anxiety based. His current DSM-IV diagnosis is . . . dysthymia, panic disorder without agoraphobia, obsessive compulsive order.[3]

(*Id.* at 467-68.)

> On July 8, 2010, Lollar saw Danehy, whose notes say:
>
> [P]hysical anxiety "edgy–heavy pressure and body dancing–can't slow down thoughts, relate things to each other – physics and free will, worried what he said was stupid, or what he said had a bigger impact than it did, jumping from topic to topic." [L]ike that all the time. Stays up to enjoy things, gets tired if stays up 24 hrs. [E]rratic sleep. Sleeps more lately, has been depressed – chronically, unless things going well in life. Irritable, worried, depressed[,]edgy; can't focus – think about what going to say, or what read, or big event and delves into it. . . . Frustrated a lot [sic]. Very tangential when talking. . . . Was told by SSI dr. that he only had anxiety and depression, not bipolar.
>
> . . . .
>
> [P]t uncertain of diagnosis, but due to the CONTENT of his racing thoughts when he can't focus, I still believe he is on the bipolar spectrum. He thinks of plans, details of future events, what could be – not worries or ruminations.

(*Id.* at 518.) Danehy noted that Lollar's speech was "Increased," his mood was "Manic" and his thought process was "very tangential" but said his memory, concentration, attention span, language and fund of knowledge were intact and gave him a GAF of 55. (*Id.* at 519-22.)

---

[3]Dysthymia "is a mild but long-term (chronic) form of depression," panic disorder is characterized by "recurrent, unexpected panic attacks and spen[ding] long periods in constant fear of another attack" and obsessive compulsive disorder is "an anxiety disorder characterized by unreasonable thoughts and fears (obsessions) that lead . . . to . . . repetitive behaviors (compulsions)." *See* http://www.mayoclinic.com/health-information/ (search "dysthymia," "panic disorder," & "obsessive compulsive disorder") (last visited Aug. 23, 2013).

On July 13, 2010, defendant conducted a psychiatric review of Lollar's case and concluded that the conditions diagnosed in the disability review – dysthymia, panic disorder and obsessive compulsive order – mildly restricted Lollar's activities of daily living and moderately restricted his ability to maintain social functioning, concentration, persistence and pace. (*Id.* at 469-84.) The reviewer concluded: "Although [Lollar] may have problems with understanding, remembering and the ability to carry out detailed instructions[,] . . . . [he] retains the mental capacity to perform simple one and two-step tasks at a consistent pace." (*Id.* at 485.) Accordingly, defendant denied Lollar's application for benefits. (*Id.* at 19.)

On July 29, 2010, Lollar again saw Danehy, who said that he was "slightly more talkative, can keep track of things" but "[n]ot more impulsive." (*Id.* at 524.) She said he "likely [had] bipolar [disorder], refus[ed] mood stabilizer . . . but [was] stable on antidepressant." (*Id.*) She noted his mood, speech and thought process as normal and said his memory, concentration, attention span, language and fund of knowledge were intact. (*Id.* at 525-27.) She did not change his GAF. (*Id.* at 527.)

Danehy's notes for August 19, 2010 state that Lollar was:

> Feeling edgy at times . . . . [G]oing out w/friends not as desirable/ is uncomfortable. Felt like an outcast – when around a lot [sic] of people. Mind wanders when home alone – depressed on and off. Not suicidal again, but has had hopelessness. Uses guitar, tv, computer as coping skills. A lot [sic] of worry about his physical/mental health.

(*Id.* at 529.) Danehy said his mood, speech and thought process were normal and his memory, concentration, attention span, language and fund of knowledge were intact. (*Id.* at 530-32.) She did not give him a GAF score. (*Id.*)

On September 9, 2010, Danehy said Lollar was "[n]ot in a dark depression, extra burst of energy, but body reved [sic] up – In an uncomfortable feeling. . . . [S]ort of feels like he wants to pace a lot [sic]. [E]xtra energy doesn't always seem tied into over anxious thoughts." (*Id.* at 533.) Danehy said his motor activity, mood, speech and thought process were normal and his memory, concentration, attention span, language and fund of knowledge were intact. (*Id.* at 534-36.) She did not include a GAF score.

On September 23, 2010, Danehy's notes say, "likely lifestyle changes and reading can accomplish things now that [symptoms] possibly lessened by meds." (*Id.* at 537.) She noted that his mood, thought process and affect were normal and his memory, concentration, attention span, language and fund of knowledge were intact. (*Id.* at 538-40.) She gave him a GAF of 55. (*Id.*)

The same day, Danehy completed a residual functional capacity ("RFC") questionnaire for defendant. She said that because of his bipolar II disorder, Lollar: (1) gets "shocks" or "rushes" when he is under stress; (2) "does not attempt complex or detailed tasks due to knowing his difficulties and limitations"; (3) has symptoms of "severe depression, disorganized thinking [and] speech; concentration/focus problems"; (4) has "[d]ifficulty leaving isolation of home due to anxiety" and "[w]hen depressed has no motivation"; (5) is unable "to function in a competitive work setting . . . on an eight-hour per day, five days per week basis"; and (6) that she could not predict the percentage of time he would be "off-task" during a work day "when [he is] depressed or in state of anxiety attack or hypomania." (*Id.* at 597-98.) She said bipolar disorder moderately restricted his activities of daily living, markedly restricted his ability to maintain social functioning and extremely limited his ability to maintain concentration, persistence or pace, and anxiety disorder

7

markedly restricted his ability to maintain social functioning and concentration, persistence or pace.

(*Id.* at 599-600.)

On October 12, 2010, at Lollar's request, defendant conducted a second review of his case. (*See id*. at 542-44.) The second reviewer also concluded that Lollar was not disabled:

> Claimant alleges disability due to bipolar disorder, anxiety disorder, and mood swings with an [alleged onset date] of 01/07/09. Records from the initial review level reveal a history of dysthymia, panic disorder without agoraphobia, and OCD. Exam dated 06/30/10 indicated that he was alert, calm, and oriented. He was cooperative. Affect was wide ranging and grossly appropriate. Speech was normal. No hallucinations or delusions. Concentration and attention were normal. Fund of information was intact. capacity for abstraction was well developed. [J]udgment was grossly appropriate. [Alleged disabling limitations] were felt to be partially credible.
>
> At the recon level, claimant indicates that he is more depressed and isolates himself more. Records from DuPage County Hospital dated 9/23/10 indicate[] that speech is normal. Mood is euthymic[4] and affect is appropriate. [Thought process] is logical and goal-directed. No hallucinations/delusions. Judgment is intact and insight is fair. He is fully oriented. Memory is intact. He is diagnosed with bipolar II disorder and alcohol/cannabis abuse. He reports no change in his daily activities.

(*Id.* at 544.)

On October 20, 2010, Danehy saw Lollar, who said he "ha[d]n't gotten rid of anxiety, . . . more depressed he is, worse anxiety is," "on depressed days [he] isolates and lays around" but had "no physical anxiety issues since last seen possibly due to [medication]." (*Id.* at 574.) She said his mood was "anxious" but his speech, thought process, memory, concentration, attention span, language and fund of knowledge were intact and gave him a GAF of 57. (*Id.* at 575-77.)

---

[4]Euthymic means "pertaining to a normal mood in which the range of emotions is neither depressed nor highly elevated." *See* http://medical-dictionary.thefreedictionary.com/euthymic (last visited Aug. 23, 2013).

8

Danehy's notes from December 1, 2010, state that Lollar is "doing better lately, less physical/panicky feelings, but still mental anxieties and depression." (*Id.* at 579.) She said his mood, thought process, memory, concentration, attention span, language and fund of knowledge were intact and gave him a GAF of 60. (*Id.* at 580-82.)

On March 3, 2011, Danehy's notes state that Lollar has:

> [G]ood and bad days, but nothing too extreme. Not enjoying going out too much. Playing in a band 1 day a week and talks to a friend daily. More bored with them than actually depressed. . . . Physical aspects of anxiety not so bad. Mind still runs all the time, but not overreacting just over aware/over thinking. . . . No heart racing, etc. in months. Sleeps broken up 8 hrs. Always likes to be up at night. Doesn't go days w/out sleep.

(*Id.* at 584.) She said his mood, thought process, memory, concentration, attention span, language and fund of knowledge were intact, and gave him a GAF of 55. (*Id.* at 585-87.)

In July 2011, Danehy's notes state that Lollar:

> [W]ent on vacation, had a job, quit[] it and found new job, [and was] seeing a girl regularly. Social anxiety still there, a little better as reintroduced to people. Working at a bar – doing the door on weekends. Not depressed. Just can't get on a regular schedule with sleeping. . . .

(*Id.* at 657.)

On August 25, 2011, Danehy said Lollar did "not[ have] a lot [sic] of anxiety or depression," had been in a relationship for two months, had a new part-time job "[b]ehind bar, [doing] kitchen work," was taking his medications and was "not easily annoyed." (*Id.* at 570.)

On October 6, 2011, ALJ John Kraybill held a hearing on Lollar's twice-denied application for benefits, at which Lollar, an impartial medical expert and an impartial vocational expert testified. (*See id.* at 19.) The ALJ found that Lollar had the severe impairments of bipolar disorder and anxiety disorder, his impairments mildly restricted his activities of daily living and moderately

9

restricted his ability to maintain social functioning and concentration, persistence or pace and concluded that Lollar could "perform unskilled work that requires 1-, 2-, or 3-step tasks and . . . allows for only, brief, superficial contact with supervisors and co-workers." (*Id.* at 21-23.) Lollar contends that the ALJ's determination is erroneous.

## Discussion

The Court reviews the ALJ's decision to determine whether it is supported by "substantial evidence" or premised on an error of law. 42 U.S.C. § 405(g); *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (stating that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). The Court reviews the ALJ's conclusions of law *de novo* but gives deference to his factual findings. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

Lollar contends that the ALJ gave too little weight to the RFC prepared by Danehy. (*See* AR at 25 ("[L]ittle weight is given to the . . . [RFC] completed by his treating psychiatrist in September 2010[,] . . . . [because she] did not submit treatment records in support of [it] and the treatment records available at the time do not support [it].").) A treating doctor's "opinion on the . . . nature and severity" of a claimant's impairments is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R § 404.1527(c)(2). The weight accorded to opinions that are not controlling depends on the length and extent of the treatment relationship, the degree of the treater's knowledge about the claimant's impairments, the extent to which the opinion is consistent with the record as a whole and any other relevant factors. *Id.*

In the RFC, Danehy said that Lollar has symptoms of "severe depression, disorganized thinking and speech; concentration/focus problems," has "[d]ifficulty leaving isolation of home due to anxiety" and cannot "function in a competitive work setting . . . on an eight-hour per day, five days per week basis." (AR at 597-98.) She also said that bipolar disorder moderately restricted his activities of daily living, markedly restricted his ability to maintain social functioning and extremely limited his ability to maintain concentration, persistence or pace, and anxiety disorder markedly restricted his ability to maintain social functioning and concentration, persistence or pace. (*Id.* at 599-600.)

The assertions in the RFC, however, are inconsistent with Danehy's own treatment records and those of the other psychiatrists who treated Lollar. When Danehy first saw Lollar in April 2010, he had not taken medication for six months and was "depressed and withdrawing," but his speech, thought process, memory, concentration, attention span, language and fund of knowledge were intact and he had a GAF of 55. (*Id.* at 507-11.) In May 2010, she said he was "anxious and depressed" but noted that he was looking for work and playing in a band each week. (*Id.* at 513-16.) In early July 2010, she said that Lollar was manic, with racing thoughts and tangential speech, but a few weeks later said he was "stable" and his speech, concentration and thought process were normal. (*Id.* at 518-22, 524-27.) In August and early September 2010, Danehy said Lollar felt "edgy at times" and was "depressed on and off" but noted no change in his mood, functioning or GAF. (*Id.* at 529-36.) On September 23, 2010, the day she completed the RFC, Danehy said Lollar "can accomplish things now that [symptoms] possibly lessened by meds," (*Id.* at 537.) In October 2010, Lollar told Danehy that he still had anxiety and "isolates" when he is depressed, but she found his thought process, memory, concentration, attention span, language and fund of knowledge to be intact

11

and gave him a GAF of 57. (*Id.* at 574-77.) In December 2010, Lollar told Danehy he "still [had] mental anxieties and depression," but was "doing better lately," and she gave him gave him a GAF of 60. (*Id.* at 579-82.) In March 2011, Danehy noted that Lollar had "good and bad days, but nothing too extreme" and gave him a GAF of 55. (*Id.* at 584-87.) In July and August 2011, Danehy reported that Lollar did "not [have] a lot [sic] of anxiety or depression," "feels a lot [sic] better, healthier," was working and was in a relationship. (*Id.* at 570-73, 657-60.) On the whole, Danehy's records show that Lollar's symptoms are greatly mitigated by medication, and even when they are at their worst, only moderately limit his functioning.[5]

The records of the other psychiatrists who treated Lollar paint a similar picture. In April 2009, Oxenhorn said that Lollar had "minor mood swings" but was doing well and looking for a job, "exhibit[ed] no signs of depression, anxiety, agitation or mood lability" and gave him a GAF of 70. (*Id.* at 387-88.) In October 2009, Dwivedi reported that Lollar "ha[d] been off medications for 6 months" and had "relapsed with [symptoms]" as a result, but found his speech, thought process, memory, concentration, attention span, language and fund of knowledge to be intact. (*Id.* at 435-38.) In November 2009, Dwivedi said Lollar reported his "depression to be situational, . . . due to physical [symptoms] and finances." (*Id.* at 440.) In March 2010, Dwivedi said Lollar's depression had "worsen[ed]" because he "ha[d] not complied with medications for past couple of months." (*Id.* at 445.) Though Lollar reported "irritab[ility], mood swings, not sleeping well at night [and being] anxious most of the time," Dwivedi said his speech, thought process, memory, concentration,

---

[5] Plaintiff argues that the RFC is supported by the records of his therapist, Jaymes Parker. However, as the ALJ noted (AR at 25), Parker, who is not a licensed physician or a licensed or certified psychologist, is not "[an] acceptable medical source[] to establish whether [Lollar] ha[s] a medically determinable impairment(s)." *See* 20 C.F.R. § 404.1513(a).

12

attention span, language and fund of knowledge were intact and gave him a GAF of 55. (*Id.* at 446-49.)

In short, the record supports the ALJ's conclusion that Danehy's RFC was inconsistent with the medical evidence, including her own treatment records. Moreover, given the fact that she first saw Lollar just weeks before he filed his application for benefits, she prepared the RFC only a few months into their treatment relationship and her post-RFC records indicate that Lollar's condition improves with consistent treatment, the ALJ did not err in refusing to give the RFC controlling or substantial weight. *See* 20 C.F.R § 404.1527(c)(2).

Lollar also contends that the ALJ erroneously discredited his testimony about the severity of his symptoms. In assessing credibility, the ALJ must consider whether there is "an objective medical basis [to] support[] the . . . severity of [the claimant's] subjective complaints" as well as his "daily activities," "the duration, frequency, and intensity of pain," "the precipitating and aggravating factors," "[the] dosage, effectiveness, and side effects of medication" and his "functional restrictions." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (quotation omitted). The Court "will not disturb an ALJ's credibility findings unless they are patently wrong." *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002).

The ALJ said Lollar's assertions that he cannot work because "his anxiety and depression are so severe," "he [is] easily distracted," has "terrible" concentration and becomes anxious when he is around other people were undermined by evidence that: (1) physicians consistently found his concentration and attention span to be normal; (2) his symptoms diminish with medication and his condition overall improves with treatment; (3) he stopped having physical manifestations of anxiety; (4) he recently told his doctor that he was "more bored than depressed"; and (5) he had recently

13

worked part-time in a bar and played in a band, occasionally went shopping, regularly socialized with a few friend friends and was engaged in a relationship. (AR at 23-25.) As Lollar points out, the ALJ did not address every assertion he made about his symptoms and functionality before deeming him only "partially credible." (*Id.* at 25.) The ALJ did, however, address the relevant factors and "buil[t] a bridge from the evidence to his conclusion." *Sims*, 309 F.3d at 429 (quotation omitted). Thus, his credibility determination stands.

## Conclusion

For the reasons set forth above, the Court denies Lollar's motion for summary judgment [8], grants defendant's motion for summary judgment [16] and affirms the Commissioner's decision. This case is terminated.

**SO ORDERED.**                           **ENTERED:  September 13, 2013**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**